IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD HACKETT, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 18-cv-01286-PX |
| BAYVIEW LOAN SERVICING, LLC, *et al.*, | * | |
| Defendants. | * | |

### MEMORANDUM OPINION

Currently pending is Defendants' motion to dismiss this case after removal to this Court. ECF Nos. 16, 1. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants in part Defendants' motion and dismisses the Truth in Lending Act claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and, in its inherent authority, remands this case to the Circuit Court for Montgomery County, Maryland. The remainder of Defendants' motion to dismiss is denied as moot.

**I.    Background**

Plaintiffs Richard and Megan Hackett (collectively, "the Hacketts") filed a class action suit in the Circuit Court for Montgomery County, Maryland, stemming from alleged improper procedures undertaken by Defendant Bayview Loan Servicing, LLC ("Bayview") as a loan servicer and Defendant The Bank of New York Mellon, as Trustee for the Certificate Holders of the CWALT, Inc., Alternative Loan Trust 2006-OA19 ("the Bank"). *Id.* ¶ 24. The Complaint avers that Bayview, as an agent for the Bank, improperly assessed property preservation or inspection charges on loans that it serviced and improperly denied the Hacketts' loan modification application. *Id.* ¶¶ 7, 27, 39. As a result, the Hacketts filed suit individually and on

behalf of three subclasses of debtors, asserting violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; the Maryland Consumer Debt Collection Practices Act, Md. Code, Com. Law, § 14-201, *et seq.*; the Maryland Consumer Protection Act, Md. Code, Com. Law, § 14-201, *et seq.*; the Maryland usury statute, Md. Code, Com. Law § 12-121(a)(1)(ii); the Maryland Mortgage Fraud Protection Act, Md. Code, Real Prop. § 7-401 *et seq.*; and the common law doctrine of unjust enrichment. The Complaint also seeks declaratory and injunctive relief. *Id.* ¶¶ 69–121.

On May 2, 2018, Defendants removed the case to this Court, asserting federal question and diversity jurisdiction. ECF No. 1. Defendants then moved to dismiss for failure to state a claim upon which relief can be granted. ECF No. 16. In response, the Hacketts concede dismissal of the TILA claims and argue that remand rather than dismissal is appropriate on the remaining state law claims. ECF No. 19 at 6.

## II. Standard of Review

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded allegations are accepted as true and viewed most favorably to the party pursuing the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id.* "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "[C]onclusory statements or 'a formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

### III. Dismissal of TILA Claims

In responding to Defendants' motion to dismiss, the Hacketts concede dismissal of the TILA claims in light of this Court's recent dismissal of "nearly identical" claims. ECF No. 19 at 16; *see also Kemp v. Seterus, Inc.*, No. 18-472, 2018 WL 3159070, at *4–6 (D. Md. June 27, 2018). The Hacketts are correct that dismissal of the TILA claims is warranted for the same reasons articulated in *Kemp*.

The purpose of TILA is to "facilitate the 'informed used of credit.'" *Watkins v. SunTrust Mortg., Inc.*, 663 F.3d 232, 234 (4th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). TILA mandates that "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g. Although the statute reaches both creditors and servicers, TILA "imposes civil liability only on creditors and, only in limited circumstances, assignees of creditors." *Kemp*, 2018 WL 3159070, at *3 (citing 15 U.S.C. §§ 1640(a), 1641(a)); *see also Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 626 (D. Md. 2017) ("[T]he only parties who can be liable for TILA violations are the original creditor and assignees of that creditor.") (quoting *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003) (internal quotation marks and citations omitted).

A creditor is defined as one "who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g). An assignee of a creditor may be liable

"only if the violation for which the action or proceeding is brought is apparent on the face of the disclosure statement . . . ." 15 U.S.C. § 1641(a).

In *Kemp*, the plaintiff brought TILA claims on behalf of herself and a putative class against a loan servicer and an assignee creditor arising from the assessment of property inspection fees. 2018 WL 3159070, at *1. This Court held that the TILA claims against the loan servicer "are clearly dismissible" because the loan servicer was neither a creditor nor assignee of a creditor. *Id.* at *4. The Court then found that Fannie Mae, as an assignee creditor, was not liable under TILA because the alleged inaccuracy forming the basis of the TILA violation (the assessment of inspection fees) was not apparent on the face of the disclosure statement. *Id.* at *5. The Court further considered whether Fannie Mae became an original creditor under TILA when the property inspection fees were assessed, and concluded that such fees were "not new credit transactions that could impose liability on Fannie Mae." *Id.* at *6. The Court so ruled because such fees had been included in the original deed of trust to which the plaintiff and original creditor agreed. *Id.*

Similar to *Kemp*, the claims against Bayview fail because Bayview, as loan servicer, is neither a creditor nor assignee creditor. *See Mosley v. OneWest Bank*, No. RDB-11-00698, 2011 WL 5005193, at *4 (D. Md. Oct. 19, 2011) (holding that plaintiff failed to state a TILA claim against loan servicer). Likewise, the claims fail against the Bank as an assignee creditor. As in *Kemp*, the alleged inaccuracies in the payoff statements are not apparent on the face of the disclosure statement because the "disclosure statement is a document provided *before* the extension of credit that sets out the terms of the loan." *Kemp*, 2018 WL 3159070, at *5 (quoting *Evanto v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016)) (internal quotation marks omitted) (emphasis added in *Kemp*). Accordingly, assessment of such fees could not

4

render the disclosure statement facially inaccurate. *Cf.* 15 U.S.C. § 1634 ("If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part."). Assignee liability against the Bank under TILA cannot attach. *See* 15 U.S.C. § 1641(a).

Further, the property inspection fees, when assessed, did not require new TILA disclosures because the fees had been part of the original agreement between the Hacketts and the original lenders. ECF No. 16-3 ¶ 14 ("Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to . . . *property inspection and valuation fees*.") (emphasis added). Although, in theory, additional fees not contemplated by previous agreement may require new disclosures, *see Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 951 n.1 (6th Cir. 1998), fees contemplated in the original agreement are not "new" credit transactions that trigger new disclosures. *See Kemp*, 2018 WL 3159070, at *6. Defendants' motion to dismiss is granted as to the TILA claims.[1]

## IV.    Remaining State Law Claims

As to the remaining state law claims, the Hacketts argue that remand is warranted. ECF No. 19 at 17 n.11. Defendants disagree, contending that the Court maintains diversity jurisdiction over the state law claims. ECF No. 20 at 5.[2] The Court finds that diversity jurisdiction is lacking and exercises its inherent authority to remand the case.

---

[1] The Court notes that the Hacketts, as representatives of putative classes, may voluntarily dismiss claims so long as the class members are not prejudiced and dismissal does not advance the representatives' individual interests over those of the class. *In re Microsoft Corp. Antitrust Litig.*, 332 F. Supp. 2d 890, 895 (D. Md. 2004); *see also Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1306 (4th Cir. 1978). Because the Court finds dismissal of the TILA claim is warranted on the merits, the Court finds no prejudice inures to the putative class in its representatives acceding to dismissal.

[2] Defendants do not assert jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

This Court, as one of limited jurisdiction, may hear only civil cases that implicate a federal question or are brought pursuant to the Court's diversity jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Diversity jurisdiction is proper where the amount in controversy exceeds $75,000 and no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a); *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (2015). Where diversity jurisdiction is proper, a defendant may remove the case to federal court pursuant to 28 U.S.C. § 1441. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

Because removal "raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey*, 29 F.3d at 151; *see also Cohn v. Charles*, 857 F. Supp. 2d 544, 547 (D. Md. 2012) ("Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court."). The defendant, as the removing party, bears the burden of "demonstrating the court's jurisdiction over the matter." *See Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005); *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Where "the complaint does not allege a specific amount in damages," the defendant must prove the amount in controversy by a preponderance of the evidence. *Ritterstein v. IAP Worldwide Servs., Inc.*, No. RDB-18-2377, 2018 WL 4914199, at *1 n.2 (D. Md. Oct. 10, 2018).

The parties do not dispute that complete diversity of citizenship exists. *See* ECF No. 1 ¶¶ 7–10. However, the Hacketts contend that the amount in controversy does not exceed $75,000, rendering removal improper on diversity grounds. ECF No. 19 at 2 n.2. The Complaint alleges $63,500 in damages for the Hacketts individually. ECF No. 2 ¶ 135(a). The Complaint also alleges damages "in excess of $75,000" for the class claims, as well as $500 for

each violation of Maryland's usury statute and either $1,000,000 or 1% of Defendants' unknown net worth for violations of TILA. *Id.* ¶¶ 79(b), 88(b), 98(b), 109(b), 121(b)–(c).[3] The Complaint does not specify the number of putative class members, nor does it seek precise damages in excess of $75,000 as to any *one* class member.

Defendants contend that the amount in controversy is satisfied because the Complaint generally avers damages of an "amount in excess of $75,000" as to the class claims. ECF No. 1 ¶ 13. But "[t]he requisite amount in controversy cannot be met by aggregating the separate claims of individual class plaintiffs." *Gilman v. Wheat, First Sec., Inc.*, 896 F. Supp. 507, 509 (D. Md. 1995) (citing *Snyder v. Harris*, 394 U.S. 332, 336 (1969)).[4] This means that the Court cannot add the expected recovery of each class member to reach collectively an amount in controversy exceeding $75,000. Rather, for the amount in controversy to be satisfied, some evidence must demonstrate an individual class plaintiff's expected damages would be in excess of $75,000. *Gilman*, 896 F. Supp. at 509.

The parties confine their jurisdictional dispute to the allegations in the Complaint. The Hacketts expressly limit the amount in controversy to $63,500 on their individual claims, a sum decidedly not in excess of $75,000. Further, although the Hacketts would be entitled, in theory, to additional damages based on membership in the putative class, the Court has no way of determining the Hacketts pro rata share of the recoverable class claims. *See Grayson v. Freedom Mortgage Corp.*, No. GJH-18-1375, 2018 WL 6505513, at *2 (D. Md. Dec. 11, 2018) ("Because Defendant has offered no evidence as to the size of the putative class, the Court would have to

---

[3] Pursuant to Maryland Rule 2-305(b), "a demand for a money judgment that exceeds $75,000 shall not specify the amount sought, but shall include a general statement that the amount sought exceeds $75,000." Md. R. 2-305(b).

[4] As an exception to this general rule, the claims of individual class plaintiffs may be aggregated where the members have a "'common and undivided interest' in the claim." *Mattingly v. Hughes Elecs. Corp.*, 107 F. Supp. 2d 694, 696 (D. Md. 2000) (quoting *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973)). Defendants do not assert that the putative class members have a common and undivided interest in the claims here.

7

speculate as to the pro rata determination of the class claims."); *see also Covert v. Auto. Credit Corp.*, 968 F. Supp. 2d 746, 751–52 (D. Md. 2013) ("Defendant does not establish any specific amount that it believes Plaintiff may recover on behalf of himself, and its general allegation that this amount exceeds $75,000 is speculative at best."). Because Defendants have failed to demonstrate that any individual class member, let alone the Hacketts, seeks to recover an amount exceeding $75,000, diversity jurisdiction is lacking.

As a result, this Court retains only supplemental jurisdiction over the remaining state law claims, which it declines to exercise. *See* 28 U.S.C. § 1367(c) (a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). In so declining, the Court may, in its discretion, either dismiss the claims or remand the case to state court. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)) (internal quotation marks omitted).

In deciding whether to dismiss or remand, the Court must "consider 'principles of economy, convenience, fairness, and comity' and whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'" *Oliver v. Campbell McCormick, Inc.*, No. CCB-16-1057, 2016 WL 3878492, at *2 (D. Md. July 18, 2016) (quoting *Hinson*, 239 F.3d at 617); *see also Burch v. N.C. Dep't of Pub. Safety*, 158 F. Supp. 3d 449, 465 (E.D.N.C. 2016). Efficiency and continuity of the case tilt in favor of remand over dismissal, particularly where removal has now delayed the case for the better part of a year. Furthermore, the Court does not find that the Hacketts have sought dismissal of the TILA claims to manipulate jurisdiction; rather dismissal is

warranted on the merits and in light of recent persuasive authority.  Remand in this context is appropriate.  The Court remands the case to the Circuit Court for Montgomery County, Maryland, and denies as moot Defendants' motion to dismiss as to the non-TILA claims.

    A separate Order follows.

December 27, 2018  
Date

      /S/  
Paula Xinis  
United States District Judge